## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALICIA MADDOX,                     )
                                   )
   Plaintiff,                    )        Civil Action No.
                                   )
v.                                 )
                                   )        **Jury Trial Demanded**
THE ASIAN AMERICAN HOTEL           )
OWNER'S ASSOCIATION, INC.,         )
                                   )
   Defendant.                    )
_____

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Alicia Maddox ("Plaintiff"), through undersigned counsel, and files this Complaint for Damages against Defendant, The Asian American Hotel Owner's Association, Inc., ("Defendant") and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for discrimination based on sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, and for violations of various state laws.

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).  The Court has supplemental jurisdiction over Plaintiff's state law claims.

3.

The unlawful employment practices alleged in this Complaint were committed within this district.  Thus, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a Georgia resident and subject to jurisdiction in this Court.

5.

At all times relevant to this action, Defendant has been doing business within this district. Defendant is subject to specific jurisdiction in this Court over the claims asserted herein.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Cecil P. Staton, located at 1100 Abernathy Road, Suite 725, Atlanta, GA, 30328, USA.

## <u>ADMINISTRATIVE PROCEDURES</u>

7.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on September 15, 2020.

8.

Upon Plaintiff's request, the EEOC issued Plaintiff a Notice of Right to Sue with respect to Plaintiff's EEOC Charge on September 28, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

9.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue.

## FACTUAL ALLEGATIONS

### 10.

Plaintiff Alicia Maddox began her employment with Defendant on or about September 26, 2017, in the Business Development Department under the direct supervision of James Jenkins.  Ms. Maddox was twenty-three years old.

### 11.

Beginning February 2018, Mr. Jenkins began to send Ms. Maddox lewd text messages. Mr. Jenkins continued to send Ms. Maddox inappropriate text messages throughout her employment at AAHOA.

### 12.

The text messages sent by Mr. Jenkins to Ms. Maddox included questions about what she was wearing and her body measurements, frequent requests for pictures of herself and other women, and messages asking Ms. Maddox if she wanted to hang out and if she had a bed for him.

### 13.

Mr. Jenkins would also ask Ms. Maddox if she saw her commission check for which she should thank him.

14.

On or around October 14, 2018, Mr. Jenkins texted Ms. Maddox about wanting to have sex with her and another female.

15.

Ms. Maddox would often ignore his texts but felt obligated to respond because Mr. Jenkins was responsible for approving her commissions.

16.

Mr. Jenkins would reprimand her for not answering his texts, and he stated that she was not making herself accessible as required by the job.

17.

Many of Ms. Maddox's clients, co-workers, supervisors, and management knew of Mr. Jenkins' propensity to sexually harass women, and also specifically knew of his harassment and battery of Ms. Maddox.

18.

From February 2018 through December 2019, Mr. Jenkins often grabbed Ms. Maddox's shoulders and waist, making her visibly uncomfortable, particularly when they were traveling for conferences.

19.

During this time frame, Mr. Jenkins also made inappropriate sexual remarks to Ms. Maddox. For example, he would tell Ms. Maddox that he wanted to have sex with her and other individuals.

20.

On one occasion, while on a business trip in Vegas, Mr. Jenkins secured only one hotel room for both he and Ms. Maddox to share. Ms. Maddox was surprised and concerned when she found this out, as this was not typical practice, and she did not want to interact with Mr. Jenkins in this manner.

21.

Ms. Maddox returned to the hotel that night and went to bed. When Mr. Jenkins returned that night, he crawled into Ms. Maddox's bed and groped her body before she could jump up and protest his advances.

22.

Ms. Maddox's client, co-workers, supervisors, and management observed Mr. Jenkins harass Ms. Maddox. For example, they saw him frequently grab Ms. Maddox's shoulders and waist, often pulling Ms. Maddox toward him, and overheard Mr. Jenkins tell Ms. Maddox that he wanted to have sex with her and other individuals.

23.

Ms. Maddox's clients, co-workers, supervisors, and management also observed Mr. Jenkins grab various other women and make similar inappropriate sexual remarks.

24.

Ms. Maddox's clients were warned by their own co-workers and managers to avoid Mr. Jenkins because he had a reputation of drinking heavily and attempting to have inappropriate sexual relations with women while attending work conferences.

25.

Mr. Jenkins attempted to have inappropriate sexual relations with at least one of Ms. Maddox's clients while at a work conference. Specifically, he put his hand around the client's waist while surrounded by AAHOA employees and other clients and said to her "Now that we are friends, can I hit on you?"

26.

When this client told her manager about Mr. Jenkins' behavior, he was clearly aware of Mr. Jenkins' propensity for sexual harassment, stating "He is creepy. Stay away from him.

27.

In December 2019, Ms. Maddox stopped responding to Mr. Jenkins' text messages. She told him to stop touching her, she avoided traveling with him on business trips, and stopped attending all dinner events with him.

28.

Mr. Jenkins lashed out at Ms. Maddox when she began to avoid him. He frequently texted her to ask why she would not answer his calls or texts. He also told Ms. Maddox's clients that she was lazy and not doing her job.

29.

Soon after Ms. Maddox stopped engaging with Mr. Jenkins, in January 2020, Ms. Maddox's commission earnings were cut in half and she was earning approximately 60% less income than the previous months.

30.

On or around July 2020, Mr. Jenkins called Ms. Maddox to offer her a promotion to work with existing accounts and an opportunity to earn more than her $40,000 base salary. This job would have required Ms. Maddox to work more closely with Mr. Jenkins.

31.

Ms. Maddox rejected Mr. Jenkins' offer. She did not want to work directly with him any longer because of his inappropriate sexual advances.

32.

Mr. Jenkins responded by screaming and berating Ms. Maddox over the phone. Mr. Jenkins told Ms. Maddox that she was ungrateful.

33.

On August 6, 2020, Ms. Maddox reached out to Geetika Rana in Human Resources to request a meeting time to discuss what she called sensitive issues. They arranged to speak on August 11, 2020, in the office.

34.

Ms. Rana did not come to the office on August 11, 2020, and did not meet with Ms. Maddox.

35.

During this same time frame, Defendant was preparing for and holding a virtual annual seminar for all their vendors. Ms. Maddox was a key component to organizing her clients' attendance at this conference.

36.

During the final week of preparations for the August 13, 2020, virtual convention, organizers were required to report to the office in person.

37.

On or around August 13, 2020, Ms. Maddox witnessed Mr. Jenkins speaking with Ms. Rana, the Human Resources personnel.

38.

Ms. Maddox was never granted her request for a meeting with Ms. Rana.

39.

On August 14, 2020, the day following the virtual convention, Defendant terminated Ms. Maddox because of a "lack of work".

40.

Following her termination, Ms. Maddox issued a formal letter to Human Resources with a request for a meeting.

41.

On or about August 17, 2020 at 4:00 p.m., Ms. Maddox met with Ms. Rana for an exit interview. Ms. Maddox told Ms. Rana that Mr. Jenkins had sexually harassed her.

42.

Ms. Rana responded by accusing Ms. Maddox of lying about her accounts of sexual harassment.

43.

As a result of Ms. Maddox's refusal to comply with Mr. Jenkins' advances, her commissions were cut, and she was terminated causing lost wages and emotional distress.

44.

Approximately two weeks after Ms. Maddox's termination, Mr. Jenkins was terminated.

## CLAIMS FOR RELIEF

## COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – TANGIBLE EMPLOYMENT ACTION

45.

Plaintiff reincorpoates by reference paragraphs 10-44.

46.

Plaintiff is a member of a protected class, i.e., she is a woman.

47.

Defendant took tangible employment action against Plaintiff. To wit, Plaintiff's commissions were cut, and Defendant terminated her employment because she rejected and opposed Mr. Jenkins' sexual demands.

48.

Defendant is liable for the sexual harassment of Plaintiff under a theory of vicarious or direct liability.

49.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

50.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

51.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination. Plaintiff is entitled to recover compensatory damages, including damages for emotional distress.

52.

Defendant acted with malice and in reckless indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages. Plaintiff is also entitled to lost wages and benefits, attorneys' fees and costs, prejudgment interest, reinstatement or front pay in lieu thereof, and any other relief available under the law.

## COUNT II:  SEX DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –
## HOSTILE WORK ENVIRONMENT

53.

Plaintiff reincorpoates by reference paragraphs 10-44.

54.

Defendant's actions in subjecting Plaintiff to severe or pervasive and ongoing sexual harassment constitute unlawful discrimination on basis of Plaintiff's gender in violation of Title VII.

55.

Defendant is liable for the sexual harassment of Plaintiff under a theory of vicarious or direct liability.

56.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

57.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her gender.

58.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

59.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination. Plaintiff is entitled to recover compensatory damages, including damages for emotional distress.

60.

Defendant acted with malice and in reckless indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages. Plaintiff is also entitled to lost wages and benefits, attorneys' fees and costs, prejudgment interest, reinstatement or front pay in lieu thereof, and any other relief available under the law.

## **COUNT III:  NEGLIGENT SUPERVISION AND RETENTION**

61.

Plaintiff reincorpoates by reference paragraphs 10-44.

62.

Defendant knew of Mr. Jenkins' sexually offensive conduct and battery upon others and upon Plaintiff.

63.

Plaintiff gave notice to Defendant of Mr. Jenkins' acts of sexual harassment and battery by complaining to co-workers and clients.

64.

Defendant knew or should have known of Mr. Jenkins' acts of sexual harassment and battery because its employees, including management, witnessed these acts occur.

65.

It was foreseeable that Mr. Jenkins would engage in the sexual harassment and battery of Plaintiff.

66.

Defendant nonetheless failed and refused to act to protect Plaintiff from sexual harassment and battery.

67.

Defendant was willfully negligent in its supervising, and/or continuing the employment of Mr. Jenkins.

68.

By retaining Mr. Jenkins after it knew or should have known of his propensity to engage in sexual harassment and batteries of Plaintiff, Defendant breached its duty to Plaintiff to provide a working environment free from sexual harssment and batteries as required by Georgia law.

69.

As a result of Defendant's negligence, which was in reckless disregard for Plaintiff's health and safety, Plaintiff suffered mental anguish, loss of income, humiliation, and other indignities.

70.

Defendant was willfully negligent in its hiring, supervising, and/or continuing the employment of Mr. Jenkins. As a result of said negligence, which was gross and in reckless disregard for Plaintiff's health and safety, Plaintiff has suffered mental anguish, loss of income, humiliation, and other indignities.

## COUNT IV:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71.

Plaintiff reincorpoates by reference paragraphs 10-44.

72.

Defendant allowed Plaintiff to be subjected to sexual harassment and battery and failed to take any corrective action.

73.

Defendant intended to inflict severe emotional distress and knew that it was a high probability that sexual harassment and battery inflicted upon Plaintiff would do so.

74.

Defendant's conduct actually caused severe emotional distress to Plaintiff.

75.

Defendant is liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

## COUNT V:  BATTERY

76.

Plaintiff reincorpoates by reference paragraphs 10-44.

77.

Mr. Jenkins touched Plaintiff in an offensive manner without permission or other justification and, therefore, committed a battery.

78.

Defendant is vicariously liable for all general and special damages proximately resulting from the battery of Plaintiff.

## COUNT VI:  NEGLIGENCE – ASSUMPTION OF DUTY

79.

Plaintiff reincorpoates by reference paragraphs 10-44.

80.

Defendant has voluntarily assumed and undertaken the duty to provide a safe workplace, as codified at O.C.G.A § 34-2-10.  Therefore, Defendant has a legal duty to prevent and eliminate sexual harassment in the workplace in a non-negligent manner. The employer is in the best position to provide a safe workplace, and to address sexual harassment in its workplace.

81.

By implementing a sexual harassment policy and disciplining employees for violations of the policy, sexual harassment is preventable.

82.

Employees depend on a harassment-free working environment.

83.

Defendant voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

84.

Defendant delegates authority to supervisors over employees.

85.

Sexual harassment should not be a risk of employment.

86.

Sexual harassment is socially harmful behavior.

87.

Plaintiff suffered harm because of her reliance on Defendant's assumed duty to prevent sexual harassment.

88.

Plaintiff relied to her detriment on the fact that Defendant undertook the duty to prevent sexual harassment.

89.

Defendant's failure to exercise reasonable care increased the risk of harm to Plaintiff and other employees.

90.

Defendant failure to exercise reasonable care caused the Plaintiff to suffer harm from sexual harassment.

## COUNT VII:  RATIFICATION

91.

Plaintiff reincorpoates by reference paragraphs 10-44.

92.

Defendant ratified Mr. Jenkins' tortious conduct, and therefore assumed liability for unauthorized conduct.  Despite Plaintiff's complaints and Defendant's knowledge of the harassment, Defendant did nothing to prevent Mr. Jenkins from harassing Plaintiff.

93.

Defendant had actual knowledge of Plaintiff's reports of sexual harassment by Mr. Jenkins, thus Defendant is strictly liable for its conduct and tangible actions.

## COUNT VIII: NEGLIGENT FAILURE TO PREVENT SEXUAL HARASSMENT

94.

Plaintiff reincorpoates by reference paragraphs 10-44.

95.

Defendant had a duty to Ms. Maddox to prevent sexual harassment in the workplace.

96.

By virtue of the aforementioned conduct by Mr. Jenkins, and the failure of Defendant to prevent sexual harassment, Defendant failed to use ordinary care to prevent sexual harassment in the workplace, causing Plaintiff to be sexually harassed.

97.

The conduct of Defendant was consciously or recklessly indifferent to the inevitable or probable consequences of its conduct in failing to remedy the harassment.

98.

Defendant is thus liable to Plaintiff for damages to her peace, happiness and feelings sustained as a result.

## COUNT IX:  PUNITIVE DAMAGES PURSUANT TO O.C.G.A. § 51-12-5

99.

Plaintiff reincorpoates by reference paragraphs 10-44.

100.

The aggravating circumstances in Mr. Jenkins' commission of the conduct against Plaintiff and intentions in committing the same entitle Plaintiff to an award of punitive damages to deter Defendant from repeating trespass and as compensation for the wounded feelings of Plaintiff.

## COUNT X:  ATTORNEYS' FEES AND EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11

101.

Plaintiff reincorpoates by reference paragraphs 10-44.

102.

Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense in litigating this case, and Plaintiff is thus

entitled to recovery of the expenses of this litigation, including attorneys' fees, under Georgia law, including but not limited to O.C.G.A. § 13-6-11.

103.

Plaintiff has put Defendant on notice that Plaintiff seeks attorneys' fees, litigation costs, and expenses from Defendant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays the court for judgment and relief as follows:

(a)      That judgment be entered against Defendant on all claims asserted against each, respectively;

(b)      That general damages be awarded for mental and emotional suffering pursuant to Title VII and state law claims;

(c)      Punitive damages against Defendant pursuant to Title VII based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(d)      Punitive damages against Defendant pursuant to O.C.G.A. § 51-12-5

(e)     Lost wages and other economic damages against Defendant pursuant to Title VII;

(f)     Reasonable attorney's fees and expenses of litigation from Defendant pursuant to Title VII and applicable law;

(g)     Reasonable attorney's fees and expenses of litigation on Plaintiff's state law claims against Defendant pursuant to O.C.G.A. § 13-6-11;

(h)     Trial by jury as to all issues;

(i)     Prejudgment interest at the rate allowed by law;

(j)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(k)     Injunctive relief prohibiting Defendant from further unlawful conduct of the type described herein; and

(l)     All other relief to which she may be entitled.

This 23rd day of December, 2020.

**BARRETT & FARAHANY**

*s/ Amanda A. Farahany*
Amanda A. Farahany
Georgia Bar No. 646135
*Attorney for Alicia Maddox*

1100 Peachtree Street, Suite 500
Atlanta, GA 30309
(404) 214-0120
amanda@justiceatwork.com